## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT FRULLA, ON BEHALF OF HIMSELF AND AS REPRESENTATIVE OF A CLASS OF PERSONS SIMILARLY SITUATED | : : : : | |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:08-CV-119 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CRA HOLDINGS INC., ET AL., | : | JANUARY 7, 2009 |
| | : | |
| Defendants. | : | |
| | : | |

## RULING ON DEFENDANTS' MOTION TO DISMISS AND
## IN THE ALTERNATIVE, TO TRANSFER [DOC. NO. 27]

**I.      INTRODUCTION**

Plaintiff Robert Frulla, on behalf of himself and as representative of a putative

class, brings suit against CRA Holdings, Inc. ("CRA") and various alleged fiduciaries of

the CRA Holdings Inc. Employee Welfare Benefit Plan ("CRA Plan" or "the Plan").[1]

Frulla seeks relief on behalf of the Plan for alleged breaches of fiduciary duty by

defendants, under the Employee Retirement Income Security Act of 1974 ("ERISA").

He alleges that, in the course of administering the Plan and related trust, defendants

engaged in actions that violated their fiduciary duties, failed to disclose material

information to Plan participants, and concealed material information from them.

Pending before the court is defendants' Motion to Dismiss, and in the alternative,

to Transfer [**Doc. No. 27**].  Defendants argue that Frulla's claims are barred by res

---

[1]The Plan itself is also joined as a defendant.

1

judicata, fail to state a claim upon which relief may be granted, and are barred by ERISA's statute of limitations.  For the reasons that follow, the court DENIES defendants' Motion in its entirety.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) provides that to be sufficient, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  However, in the recent decision of Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court explained that to be sufficient, factual allegations in a complaint must "'raise a right to relief above the speculative level.'" Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (quoting Twombly, 127 S. Ct. at 1965). According to the Second Circuit, what Twombly requires is not "a universal standard of heightened fact pleading," but rather "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007).  Furthermore, allegations of fraud must be pled with particularity. Fed. R. Civ. P. 9(b).

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, the court must "accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002).

III.     **BACKGROUND**[2]

The CRA Plan is a "welfare plan" under ERISA.  See ERISA § 3(1), 29 U.S.C. § 1002(1).  The Plan provides health care and life insurance benefits to a class of retirees.  In 1988, various plaintiffs, who are not parties in this action, commenced a civil action against defendants' predecessors in interest, alleging that those defendants had improperly amended the Plan.  Those parties entered into a settlement agreement, which resulted in the entry of an Agreed Judgment on January 11, 1993.  The Agreed Judgment provided that CRA's predecessor in interest, ICC, was obligated to provide covered retirees with health care benefits for their lifetimes, as well as life insurance benefits.

In late 1996 and early 1997, CRA and its predecessors sold the substantial majority of their revenue-producing subsidiaries to third parties in various transactions (the "Transactions"), and distributed to their shareholders all proceeds from the Transactions with the exception of expenses, indebtedness, and a $12 million deposit, which was placed in a trust to fund the lifetime health care and life insurance benefits under the Plan.  As a result of the Transactions and accompanying distribution, no additional funding beyond the $12 million placed in trust would be available in the future to meet CRA's obligation to fund benefits under the Plan.

In 1997 or 1998, $5,260,129 of the trust funds were paid to Reliastar Life Insurance Company in exchange for Reliastar's agreement to provide life insurance benefits to participants in the CRA Plan under the terms of the Agreed Judgment.

---

[2]For the purposes of this Motion to Dismiss, the court accepts the well-pleaded facts alleged by the plaintiff as true.

By the time the Plan fiscal year commenced on April 1, 1999, the fiscal condition of the Plan had begun to deteriorate.  The Plan's deteriorating fiscal condition was not disclosed to Plan participants, nor did Plan administrators attempt to seek additional funding for the Plan.

The Form 5500 annual reports, for fiscal years ending March 31, 1997 through March 31, 2002, erroneously stated that the Plan sponsor had the right to modify or terminate the Plan.  The Plan financial statements for Plan years ending March 31, 1997 through March 31, 2003, erroneously understated the rate of increase in future health care costs and the cost of the lifetime benefits CRA and its predecessors were obligated to provide.  The Plan financial statement for the year ending March 31, 2003, noted a deficit of over $2 million in the value of trust funds as compared to the present value of obligations.

On April 11, 2005, Frulla and other Plan participants received a letter advising them that they would need to pay monthly contributions to continue receiving health care benefits under the Plan.  The letter stated that the trust funding the CRA Plan was running out of money.  Prior to this date, Frulla was unaware of the Transactions, the accompanying distribution, the purchase of life insurance, or the deteriorating fiscal condition of the Plan.

On November 10, 2005, Frulla commenced an action in the United States District Court for the Southern District of Florida, seeking a declaratory judgment that CRA was obligated to provide Frulla and other plan participants with lifetime health care benefits, under the terms of the Plan and Agreed Judgment, without requiring them to pay monthly contributions.  On July 20, 2006, the district court denied Frulla's request for a

4

declaratory judgment.  On September 30, 2008, the Eleventh Circuit reversed, holding

that the Agreed Judgment precluded CRA from requiring employee contributions as a

precondition to eligibility for health care coverage under the CRA Plan.  See Order,

Frulla v. CRA Holdings Inc., No. 05-81014-cv-DMM (S.D. Fla. July 21, 2006) ("District

Court Order"), rev'd, 543 F.3d 1247 (11th Cir. 2008) ("Frulla I").

## IV.    DISCUSSION

### A.    Res Judicata

Defendants argue that res judicata bars Frulla's claims because the claims in the

instant suit are "nearly identical" to claims brought in a prior suit in the Southern District

of Florida.  See Frulla, 534 F.3d 1247; District Court Order.  The doctrine of res judicata

provides that "a final judgment on the merits of an action precludes the parties or their

privies from relitigating issues that were or could have been raised in that action." Allen

v. McCurry, 449 U.S. 90, 94 (1980); see also St. Pierre v. Dyer, 208 F.3d 394, 399 (2d

Cir.2000); Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir.1994). To prove that res judicata

bars a claim, a moving party must demonstrate that "(1) the previous action involved an

adjudication on the merits; (2) the previous action involved the [parties] or those in

privity with them; [and] (3) the claims asserted in the subsequent action were, or could

have been, raised in the prior action."  Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001)

(internal quotation marks and citation omitted).

The parties primarily dispute the third prong.  As the Second Circuit has

explained, "[w]hether a claim that was not raised in the previous action could have been

raised therein 'depends in part on whether the same transaction or connected series of

transactions is at issue, and whether the same evidence is needed to support both

5

claims.'" Id. (quoting Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d
Cir.1997)).  "[T]he first judgment will preclude a second suit only when . . . the second
cause of action requires the same evidence to support it and is based on facts that
were also present in the first."  Maharaj v. BankAmerica Corp., 128 F.3d 94, 97 (2d Cir.
1997) (citations omitted).  "To ascertain whether two actions spring from the same
'transaction' or 'claim,' we look to whether the underlying facts are 'related in time,
space, origin, or motivation, whether they form a convenient trial unit, and whether their
treatment as a unit conforms to the parties' expectations or business understanding or
usage.'" Interoceanica Corp., 107 F.3d at 90-91 (quoting Restatement (Second) of
Judgments § 24(b)).  As Pike explains, "the 'could have been' language of the third
requirement is something of a misnomer.  The question is not whether the applicable
procedural rules permitted assertion of the claim in the first proceeding; rather, the
question is whether the claim was sufficiently related to the claims that were asserted in
the first proceeding that it should have been asserted in that proceeding." Pike, 266
F.3d at 91 (citations omitted).

    In May of 2005, CRA amended the CRA Plan to require a $50 per month
contribution from participating retirees ($100 per month in the case of retirees with
dependents).  Frulla, 543 F.3d at 1249-50.  In Frulla I, Frulla challenged this
Amendment, and sought "a declaratory judgment that the Agreed Judgment in the
Original Action obligates CRA to provide health care benefits to the class of retirees for
life, without monthly contributions or other payment," as well as "injunctive relief
prohibiting CRA from enforcing its contribution requirement and an order requiring CRA
to return any monthly contributions already made."  Frulla, 543 F.3d at 1250.  As the

6

district court and Eleventh Circuit opinions make clear, Frulla I concerned itself

exclusively with a dispute over the obligations that the Agreed Judgment imposed on

CRA—more specifically, whether CRA was obligated to provide health care benefits

without imposing a monthly contribution requirement.  See Frulla, 543 F.3d at 1250-54;

District Court Order at 1-2.

The instant litigation, on the other hand, is a claim that the administrators of the

CRA Plan and trust breached their fiduciary duties.  The suit seeks to require fiduciaries

to reimburse the CRA Plan for losses resulting from alleged breaches of fiduciary duty,

and associated declaratory and injunctive relief.  The evidence at issue is not the same

as in Frulla I.  In Frulla I, the court's task was to evaluate the Agreed Judgment and

CRA's actions to determine if the actions taken in requiring contributions were in

conformity with the Agreed Judgment.  In the instant case, the court's task will be to

evaluate the alleged activities of fiduciaries to determine whether one or more breached

a fiduciary duty owed to Frulla and other plan participants in undertaking, failing to

undertake, or failing to disclose certain actions.  These activities, which Frulla alleges

occurred over a period of time from 1996 to 2005, were not at issue in Frulla I because

they had no bearing on whether or not the Plan obligated CRA to pay health care

benefits without imposing a contribution requirement.[3]

--------

[3]The cases defendants cite are not to the contrary.  For example, the plaintiff in Meagher v. Bd. of
Trs., 921 F. Supp. 161 (S.D.N.Y. 1995), challenged, as a breach of fiduciary duty, the Trustees' practice in
determining that individuals with a certain type of break in service did not qualify for pension benefits.
Earlier, Meagher had been denied benefits on this basis, and had brought suit for denial of benefits.  The
court determined that the two suits challenged the same practices and therefore the second suit was
barred by res judicata.  Id.  It properly did so; even though Meagher articulated a new legal theory, it was
based on the same facts and the same alleged wrong.  To the contrary, the instant suit involves a different
legal theory and different set of relevant facts than Frulla I.

That the claims in the suits are sufficiently different is reinforced by the fact that the outcome in one suit does not necessarily dictate the outcome in the other. The finding for Frulla in <u>Frulla I</u> did not require a determination that defendants had breached their fiduciary duty as alleged in the instant suit. Even if defendants engaged in none of the breaches of fiduciary duty now alleged, the Eleventh Circuit could still have found them liable for violating the terms of the Agreed Judgment. Similarly, the fact that Frulla has prevailed in his interpretation of the Agreed Judgment does not require a finding that one or more defendants breached a fiduciary duty.

The fact that the two cases seek different forms of relief, in response to different alleged wrongs, also militates against a finding that the second suit is barred by res judicata. <u>Frulla I</u> sought to require CRA to fulfill its agreed-upon obligation to provide benefits. The instant suit seeks to require fiduciaries to reimburse the Plan to make it whole for the losses it suffered as a result of their alleged fiduciary breaches.

Defendants emphasize that both cases involve interpretation of the terms of the Agreed Judgment, while Frulla disputes that the instant case requires construing the Judgment. The court recognizes that the instant case may, like <u>Frulla I</u>, require evaluation of the terms of the Plan and the Agreed Judgment to determine if the activities in which defendants allegedly engaged constitute breaches of fiduciary duty. However, because the claims and facts underlying the claims are different, the instant suit is not precluded simply because it may also require an examination of the Agreed Judgment or Plan. Similarly, even though Frulla's ultimate subjective goal—to secure, for the long term, the benefits to which he claims he is entitled—may be the same in both suits, that is not sufficient to preclude him from bringing his fiduciary duty claims in

8

a separate suit.  Accordingly, Frulla's claims are not barred by res judicata.

    B.    <u>Breach of Fiduciary Duty Claims</u>

ERISA codifies the duties owed by a fiduciary in general terms:

(a) Prudent man standard of care

> (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> > (A) for the exclusive purpose of:
> >
> > > (i) providing benefits to participants and their beneficiaries; and
> > >
> > > (ii) defraying reasonable expenses of administering the plan;
> >
> > (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> >
> > (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> >
> > (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. . . .

ERISA § 404(a), 29 U.S.C. § 1104(a).  "Because the statute does not enumerate or elaborate in any detail on the duties owed by a fiduciary to a plan beneficiary, the courts have been called upon to define the scope of a fiduciary's responsibilities."  <u>Pocchia v. NYNEX Corp.</u>, 81 F.3d 275, 278 (2d Cir. 1996).  Thirty-five years after ERISA's enactment, these duties have become well-defined in some areas, but defining the scope of fiduciary duties remains an ongoing process in other areas.  <u>See</u> <u>id.</u>

1.      Counts One, Two and Four (in part): Failure to Take Necessary
        Action at the Time of the Transactions, Failure to Pursue Recovery
        from CRA or Other Fiduciaries at the Time of the Transactions or
        Subsequently, and Failure to Disclose the Transactions and
        Deteriorating Condition of Fund to Plan Members

In Count One, Frulla alleges that Harold Marron breached his fiduciary duty to

Frulla by failing to appropriately investigate or take action at the time of the

Transactions to ensure that there would be sufficient assets available to fund lifetime

health care benefits, and by concealing the occurrence of the Transactions from Frulla.

In Count Two, Frulla alleges that Plan Administrator Defendants other than Harold

Marron violated their fiduciary duty by failing to pursue recovery from CRA, its

shareholders, or other individual defendants of additional money to adequately fund the

Plan.  He alleges that they also violated their fiduciary duty by failing to pursue Harold

Marron for his acquiescence in the Transactions without ensuring that adequate funds

were made available to the CRA Plan.  He further alleges that defendants violated their

fiduciary duty by concealing the Transactions from Frulla.  In Count Four, Frulla alleges

that the December 1996 Board members breached their fiduciary duty by approving or

permitting the Transactions, and by concealing the occurrence of the Transactions from

Frulla.[4]

        a.      Failure to Act

Defendants contend that these counts should be dismissed for failure to state a

claim.  Defendants argue that the sale of assets was not a fiduciary decision, because

the assets belonged to CRA, not the Plan.

---

[4]Count Four also alleges the failure by various defendants to monitor the performance of fiduciary
duties by Marron.  This claim is discussed together with Count Five's failure to monitor claim, below.

10

Frulla argues that defendants breached their fiduciary duty by failing to ensure that the Plan was adequately funded, and by failing to disclose information material to the beneficiaries' rights.  He contends that the defendants knew that, if the Transactions took place, there would be no reasonable prospect of obtaining additional funding for benefits after the trust ran out.  He analogizes to cases in which courts have permitted prospective claims challenging a future violation of the obligation to provide benefits, in arguing that the Trustees had an obligation to seek relief against CRA to prevent it from divesting itself of its assets.

Writing before the Eleventh Circuit reversed the district court decision in their favor in Frulla I, defendants argued that because CRA has no obligation to fund the Plan in the first instance, they are not obligated to ensure that the benefits in the plan are adequately funded.  The Eleventh Circuit, however, found that CRA could not require employee contributions as a precondition to receiving healthcare coverage under the CRA Plan, thus implicitly concluding that CRA had an obligation to fund benefits.  See Frulla, 543 F.3d at 1251-53.  In supplemental briefing, defendants argue that the Eleventh Circuit's decision notwithstanding, CRA had no obligation to pre-fund the plan, and accordingly the fiduciaries had no obligation to seek contributions from CRA until and unless CRA was in breach of a contractual obligation to pay healthcare benefits.  Def.'s Supp. Mem. at 2-4.  They contend that, even if the Agreed Judgment requires additional contributions from CRA, those obligations arise in contract, and cannot be the subject of a fiduciary duty.  Id. at 5.

Even if ERISA itself imposes no minimum funding requirement for welfare plans, CRA is contractually obligated to provide and fund benefits under the Plan as a result of

11

the Agreed Judgment.  <u>See</u> <u>Frulla</u>, 543 F.3d at 1252-54.  Defendants cite cases that

conclude, in the context of a welfare benefit plan, that because a sponsor has no

obligation under ERISA to fund a welfare benefit plan, fiduciaries cannot hold it

responsible for failing to require the sponsor to do so, and accordingly participants

cannot bring a claim for breach of fiduciary duty in that context.  <u>See, e.g.</u>, <u>Pfahler v.</u>

<u>Nat'l Latex Prods. Co.</u>, 517 F.3d 816, 832-33 (6th Cir. 2007).  Frulla, however, alleges

that defendants were aware that CRA was taking actions that would permanently

prevent it from meeting its obligation under the Agreed Judgment, and nevertheless

failed to take actions to ensure that the Transactions did not render the Plan unable to

meet its obligations.  Even if CRA's underlying funding obligation stems from the

Agreed Judgment (and hence lies in contract), that fact does not relieve fiduciaries of

their responsibility under ERISA to ensure that a sponsor funds a Plan of a type it is

contractually obligated to fund.  <u>Pfahler</u> is not to the contrary; it turned on the fact that

the employer was not obligated to fund the Plan (at any point), and noted the duty of

fiduciaries "to take action to ensure that 'a plan receives all funds to which it is entitled.'"

<u>Id.</u> (citation omitted).

Neither ERISA nor the Agreed Judgment mandates a particular schedule of

contributions to the CRA Plan.  Nevertheless, because the Agreed Judgment requires

ICC and its successors to fund these benefits, the fiduciaries may have breached their

fiduciary duties by failing to take steps to ensure that CRA adequately funded the Plan.

To the extent CRA or its predecessors engaged in transactions, of which fiduciaries

were aware, that the fiduciaries knew or should have known would result in an inability

to fund future benefits, the fiduciaries had an obligation to investigate steps they could

take to prevent the Plan from becoming insolvent.  Accordingly, if defendant fiduciaries
knew that the Transactions would result in the deterioration of the fund and that there
would be no reasonable prospect of obtaining additional funding following the
Transactions, the fiduciaries may have had the obligation to pursue means of protecting
the CRA Plan from that risk.[5]

        b.    <u>Failure to Disclose</u>

Defendants claim no obligation to disclose the Transactions to Plan participants
because, they contend, ERISA does not affirmatively require disclosure in this instance.
They argue that ERISA imposes only limited disclosure obligations, with which
defendants complied, pointing to their filing of Summary Plan Descriptions (SPDs) and
Form 5500 as required.  In response to Frulla's contention that their fiduciary duties
require disclosure, defendants argue that courts have found fiduciary obligations to
disclose information material to beneficiaries' rights only where there is a meaningful
nexus between the information and the provision of benefits or defrayment of expenses.

Frulla has specifically alleged that defendants issued erroneous Plan financial
statements and annual Form 5500 filings that concealed the deteriorating financial
condition of the Plan.  He also argues that defendants should have disclosed the
Transactions and their effects in 1997, and again in 2003 when the deteriorating

---

[5]In support of their arguments about defendants' obligations, Frulla cites <u>Chao v. Merino</u>, which
held that, "[i]f a fiduciary was aware of a risk to the fund, he may be held liable for failing to investigate fully
the means of protecting the fund from that risk."  452 F.3d 174, 182 (2d Cir. 2006).  In their Reply Brief,
defendants argue that <u>Chao v. Merino</u> is inapposite because it involved the failure to prevent an individual
known to be untrustworthy from stealing plan assets.  Defs.' Reply Mem. at 4.  While defendants are
correct that <u>Merino</u> is not on all fours with the instant case, the principle it states—that fiduciaries must
investigate risks to the plans that they administer—also applies in situations where a plan sponsor or co-
fiduciary contemplates action that could risk the plan's ability to meet its obligations.

condition of the Plan became apparent.  This deteriorating condition, Frulla alleges, reflects CRA's failure to fulfill its funding obligations.[6]

"Communicating information about future plan benefits is indeed a fiduciary obligation.  Fiduciaries may be held liable for statements pertaining to future benefits if the fiduciary knows those statements are false or lack a reasonable basis in fact." Flanigan v. Gen. Elec. Co., 242 F.3d 78, 84 (2d Cir. 2001) (internal citations omitted). The question of whether fiduciaries have fulfilled the obligation to communicate accurate information has generally arisen in the context in which employees are provided false or misleading information about their employer's future plans to create retirement incentives.  See, e.g., id.; Ballone v. Eastman Kodak Co., 109 F.3d 117 (2d Cir. 1997); Mullins v. Pfizer, Inc., 23 F.3d 663 (2d Cir. 1994).  Yet the same principle applies to the situation in which a plan's financial condition is deteriorating and both the cause of the deterioration and the fact of its existence are concealed from plan participants through the issuance of erroneous statements and Form 5500 filings.

Whether or not the Trustees had the power or obligation to stop CRA from engaging in the Transactions is not determinative of whether Frulla has stated a claim, as "ERISA fiduciaries 'may have duties to disclose information about plan prospects that they have no duty, or even power to change." Flanigan, 242 F.3d at 84-85.  Frulla may be able to show, for example, that disclosure of the Transactions, their probable effect, and the subsequent condition of the Plan would have enabled Frulla or other

---

[6]Defendants argue that the information at issue here was immaterial "because CRA was not obligated to fund the Plan."  Under the Eleventh Circuit's interpretation of the Agreed Judgment, however, CRA is effectively obligated to fund the Plan.  See Frulla, 543 F.3d at 1252-54.

Plan participants to have acted to enforce their interest in the continued vitality of the

Plan if the fiduciaries were unable or unwilling to do so.  Frulla has therefore stated a

claim for failure to disclose.

        2.     <u>Count Three: Failure to Prevent Plan from Purchasing Single Premium Life Insurance</u>

In Count Three, Frulla alleges that, by causing or permitting the Plan to engage

in a payment of a "single premium" to Reliastar to purchase life insurance, Plan

fiduciaries imprudently engaged in a transaction which they knew or should have known

would have left the Plan with insufficient funds to meet its obligation to provide lifetime

health care benefits.

Defendants argue that the purchase of life insurance does not breach their

fiduciary duty because the Plan can rely upon participant contributions to restore the

Plan's ability to provide health care benefits.[7]  Defendants also argue that because life

insurance was a benefit provided under the Plan, the use of Plan funds to purchase life

insurance was not improper or imprudent.  Finally, it argues that Frulla has not alleged

any facts to support the claim that the purchase was improper or imprudent.

Frulla counters that the purchase violated the defendants' fiduciary duties

because they did not consider the risk that the purchase would unreasonably interfere

with the Plan's ability to pay out health care benefits.

While defendants protest that Frulla has alleged only that the purchase was

improper or imprudent and not included facts to support that claim, Frulla has alleged

---

[7]Under the Eleventh Circuit's interpretation, however, CRA cannot rely on individual contributions to fund the plan. <u>Frulla</u>, 543 F.3d at 1253.

facts in support—that the reason for the imprudence was because the purchase left the

trust with too little money to pay out its other obligations and that defendants knew or

should have known that making the premium payment would lead to this result.  As the

Supreme Court has explained,

> There is more to plan (or trust) administration than simply complying with the specific duties imposed by the plan documents or statutory regime; it also includes the activities that are 'ordinary and natural means' of achieving the 'objective' of the plan. Indeed, the primary function of the fiduciary duty is to constrain the exercise of discretionary powers which are controlled by no other specific duty imposed by the trust instrument or the legal regime.

Varity Corp. v. Howe, 516 U.S. 489, 504 (1996) (citation omitted).  Even if defendants

purchased life insurance in compliance with a duty imposed by the Plan, their means of

doing so are still constrained by fiduciary duty and by their obligation to fulfill all the

objectives of the Plan.  Thus, while Plan administrators may have had an obligation to

purchase life insurance, Frulla has alleged that—owing to the fact that the purchase

could result in the Plan's inability to meet its future obligations—the manner in which

this action was taken was imprudent.  These facts are sufficient to state a claim for

breach of fiduciary duty.

      3.     <u>Counts Four (in part) and Five: Failure To Act Prudently in Appointing Fiduciaries, Monitor Other Fiduciaries, Pursue Legal Action Against Them, or Take Other Steps to Protect the Plan</u>

Defendants argue that Counts Four and Five should be dismissed because they

are derivative of the alleged primary fiduciary breach and, where there is no primary

breach, there can be no claim for breach of failure to appropriately appoint or monitor

fiduciaries.  While this may be correct as a point of law, the court disagrees that Frulla

has failed to allege a "primary" fiduciary breach.  <u>See</u> <u>supra</u>, at 10-16.  Accordingly,

16

Frulla has stated a claim in Counts Four and Five.

      C.    Statute of Limitations

      Defendants argue that, even if Frulla has stated claims for relief, those claims are barred by the statute of limitations.  ERISA's statute of limitations for actions to remedy breaches of fiduciary duty provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

ERISA § 1113, 29 U.S.C. § 1113.[8]

      The parties do not dispute that Frulla has adequately alleged that he did not have actual knowledge of the alleged breaches, within the meaning of the three-year statute of limitations provision, prior to April 11, 2005.  The Complaint in the instant suit was filed on January 23, 2008, less than three years later.  Therefore, to the extent that the date of the last action which constituted a part of a breach or violation, or in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, occurred within the six years prior to January 23, 2008, action on such breaches is not barred by the statute of limitations.  See 29 U.S.C. § 1113(1).

      With regard to claims arising more than six years prior to January 23, 2008, the

---

[8]Underscoring the challenge of applying its terms, the Second Circuit has characterized this statute of limitations as "[h]eld together by chewing gum and baling wire," and called it "enigmatic—almost chimerical."  Caputo v. Pfizer, Inc., 267 F.3d 181, 184, 188 (2d Cir. 2001).

parties dispute whether Frulla has adequately alleged "fraud or concealment," in order to permit application of the separate, six-year statute of limitations applicable to such claims.  See Caputo v. Pfizer, Inc., 267 F.3d 181, 189-90 (2d Cir. 2001).  They also dispute the date on which the statute starts to run.  Defendants argue that "date of discovery of such breach or violation" refers to the date the various alleged acts upon which Frulla bases his claims were disclosed in public filings.  Frulla argues that "date of discovery of such breach or violation" has a meaning akin to "actual knowledge of the breach of violation" as interpreted in the context of the three-year statute of limitations, that is, the date on which he had actual knowledge of the violations—April 11, 2005.  See Caputo, 267 F.3d at 193-94.

       1.    Fraud or Concealment

      The Second Circuit has provided that the separate, six-year statute of limitations should be applied to cases in which a fiduciary:

> (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty.

Caputo, 267 F.3d at 190 (citation omitted).  In other words, it applies in cases of fraud, fraudulent concealment, or both.  Id. at 189-90.  Defendants argue that Frulla fails to make out a claim of fraud or fraudulent concealment because defendants had no duty to disclose the information allegedly concealed, defendants did not engage in fraudulent conduct or engage in acts to hinder the discovery of a breach, plaintiffs fail to plead acts of concealment with specificity, and the Transactions were not concealed because they were publicly disclosed.  Frulla counters that defendants had a duty to disclose the information, that the Complaint carefully identifies how each defendant

acted to conceal information from beneficiaries, that defendants failed to disclose material facts, and that the public disclosure of the Transactions themselves is insufficient to overcome a claim of concealment.

In arguing for the application of the six-year statute of limitations, Frulla appears to rely on both the fraud and concealment provisions of the statute.  To satisfy the "fraud" provision, he alleges several knowing omissions of material fact on the part of the fiduciaries.  He alleges that the Transactions and their effects had a material effect on the viability of the Plan and should have been disclosed in 1997, and again in 2003 when the deteriorating condition of the Plan became apparent.  He makes a similar allegation about the life insurance premium payment.  He also points to misrepresentations, including that defendants issued erroneous Plan financial statements and annual Form 5500 filings that failed to disclose the deteriorating financial condition of the Plan.

Fraud must be pled with particularity under Federal Rule of Civil Procedure 9(b). With regard to misrepresentations, a plaintiff must identify the time, place, speaker, and content of the alleged misrepresentations.  See Caputo, 267 F.3d at 191 (citation omitted).  With regard to omissions, a plaintiff must detail the omissions made, state the person responsible for the failure to speak, provide the context in which the omissions were made, and explain how the omissions deceived the plaintiff.  See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (" Fraud must be pled with particularity, Fed.R.Civ.P. 9(b), which requires that the plaintiff '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were

made, and (4) explain why the statements (or omissions) are fraudulent.'") (internal citation omitted).

With regard to his breach of fiduciary duty allegations sounding in failure to disclose, Frulla has adequately pled fraud in the form of knowing omissions of material facts.  For each alleged breach of fiduciary duty on the part of a defendant, Frulla has alleged the defendant's knowledge, his failure to speak, the context in which he failed to speak, and the content that he was allegedly responsible for disclosing to Plan participants.  See Complaint at ¶¶ 60, 61, 68, 76, 83, 86.  According to Frulla's allegations, these failures to disclose misled plan participants, including Frulla, into believing that the lifetime benefits secured to them by the Plan and Agreed Judgment remained available and adequately funded.  Defendants argue that the fiduciaries complied with all disclosure obligations under ERISA and thus had no obligation to make any further disclosures pursuant to their fiduciary duties.  However, whether or not defendants met their disclosure obligations under ERISA, given Frulla's allegations, is a fact-specific inquiry inappropriate for resolution at this stage.

With regard to the underlying acts and omissions that Frulla alleges constituted breaches of fiduciary duty—the undertaking of the Transactions and the failure to ensure that the Plan retained an adequate source of funding, the payment of the Single Premium, the preparation of inaccurate Plan financial statements and Form 5500 filings, the failure to pursue other fiduciaries, and the concealment of the Plan's deteriorating financial condition and deficit in the value of the trust—Frulla has pled that defendants took affirmative steps to hinder their discovery by Plan participants, including by furnishing inaccurate Plan financial statements and Form 5500 filings to

20

Plan members.  Defendants argue chiefly that public disclosure of the Transactions vitiates any claim of concealment.  However, in a claim of fraudulent concealment, the question is whether defendants prevented Frulla from discovering his claim or injury, and public disclosure of the Transactions did not necessarily inform Frulla of the alleged breaches themselves.  Cf. Caputo, 267 F.3d at 190 n.3 (quoting State of New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988)) ("in cases of fraudulent concealment, 'the plaintiff may prove the concealment element by showing . . . that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury . . . ."); Date of Discovery, infra (discussing what it means to "discover" one's claim or injury).  Thus, while defendants' public disclosure of the Transactions may aid their defenses on the merits to the claim of failure to disclose, Frulla is entitled to proceed to discovery to attempt to demonstrate that defendants took steps to prevent his discovery of his claims, other disclosures not withstanding.

>2.   Date of Discovery

When a "discovery rule" applies, the statute of limitations begins to run from the date on which the plaintiff discovers, or with due diligence reasonably should have discovered, that he has suffered an injury.  See, e.g., United States v. Kubrick, 444 U.S. 111, 122 (1979) (statute of limitations under FTCA begins to run when plaintiff discovers his injury and its cause, even if he is ignorant of the fact that the injury was negligently inflicted); Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-53 (7th Cir. 1990) ("[T]he date on which the statute of limitations begins to run. . . . is not the date on which the wrong that injures the plaintiff occurs, but the date—often the same, but sometimes later—on which the plaintiff discovers that he has been injured. The rule that

21

postpones the beginning of the limitations period from the date when the plaintiff is

wronged to the date when he discovers he has been injured is the 'discovery rule' of

federal common law . . . ."); see also Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704,

711 (2d Cir. 2002) ("Several jurisdictions . . . recognize an exception to the general rule

for certain causes of action such that the limitations period does not begin until the

plaintiff discovers or reasonably should have discovered the facts supporting the cause

of action. . . . The discovery rule 'is generally applicable to confidential or fiduciary

relationships.' . . . '[W]hen a potential plaintiff is in a fiduciary relationship with another

individual, that plaintiff's burden of discovery is reduced.' . . . In such cases, a plaintiff 'is

entitled to rely on the statements and advice provided by the fiduciary,' and 'if the delay

in commencing an action is induced by the conduct of the defendant, [the defendant]

cannot avail himself of the defense of the statute [of limitations].'" (internal quotation

marks and citations omitted)).

ERISA's statute of limitations explicitly demands applicability of a discovery rule,

providing that the "action may be commenced not later than six years after the date of

discovery of such breach or violation."  ERISA § 413, 29 U.S.C. § 1113 (emphasis

added); see Caputo, 267 F.3d at 190 ("[T]he final version of the statute adopted a six-

year term and a discovery rule (i.e., the limitations period begins to run when the

employee discovers or with due diligence should have discovered the breach) . . . .").

In the instant case, Frulla did not discover that he had suffered any injury until his

receipt of a letter on April 11, 2005, informing him of the trust's deteriorating financial

condition and of his need to pay monthly contributions.  Knowledge of the Transactions

or other matters in the public record at an earlier date would not itself have put Frulla on

notice that he had suffered an injury, since it was not until receiving the letter on April

11, 2005, that Frulla discovered that he had suffered an injury.[9]  Frulla has alleged that

Plan documents did not disclose that the trust was underfunded, the fact that a

payment had been made for life insurance benefits, or the deteriorating condition of the

trust.  Accordingly, whether or not Frulla can be charged with constructive knowledge of

the Transactions at the time they were disclosed in public filings, he did not discover,

nor with due diligence should he have discovered, that he had suffered an injury until

2005, and accordingly the six-year statute of limitations did not begin to run until that

date.[10]  Accordingly, Frulla's claims do not, as a matter of law, fail to satisfy ERISA's

statute of limitations.

> D.   Venue

Defendants request that to the extent any of Frulla's claims survive the Motion to

Dismiss, that the case be transferred to the Southern District of Florida.  See 28 U.S.C.

§ 1404(a) (authorizing transfer when the suit could properly have been brought in more

than one district).  The party moving for the transfer has the burden of establishing that

its choice of venue is more appropriate.  H. Lewis Packaging, LLC, v. Spectrum Plastics

Inc., 296 F. Supp. 2d 234, 241 (D. Conn. 2003) (citing Ford Motor Co. v. Ryan, 182

F.2d 329, 330 (2d Cir. 1950)).  In considering a motion to transfer, the court can

---

[9] Even if Frulla can be charged with having discovered his injury on September 26, 2003, based upon a theory of constructive knowledge of the Plan financial statements issued that date showing a $2 million deficiency between the trust's assets and its obligations, the six-year statute of limitations would still not have run as of the time Frulla filed the instant suit on January 23, 2008.

[10] Because the "date of discovery" runs from a plaintiff's discovery that he has been injured and not his discovery of the details of any claim he may have against the injurer, the fact that the Transactions were publicly disclosed would likely prevent Frulla from claiming that the statute of limitations began to run any later than April 11, 2005, since at the very least, he became aware of his injury on that date and could begin to investigate information about the source of the injury.

consider several factors, including: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006) (citing Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)).  In addition, the plaintiff's choice of forum should be given "great weight."  Id.

Defendants argue that this case could properly have been brought in Florida, and that the Florida Court handling Frulla I is already intimately familiar with the facts.[11] They argue that the convenience of parties and location of documents and witnesses favors Florida, since the parties have already litigated in Florida and have retained counsel in Florida.  They argue that because Frulla first brought suit in Florida, he cannot complain about Florida as a venue for the pending action.  In their Reply Brief, they add additional arguments, including that defendant Marron, a critical witness, was served in the Southern District of Florida and therefore may be found there.

Assuming that the Southern District of Florida would be a proper venue, the court finds defendants' arguments in favor of transfer to be unavailing.  Duplicative or bifurcated litigation is not an issue in light of the Eleventh Circuit's decision to grant the declaratory judgment without remanding the case to the district court.  While the district

---

[11]Defendants also argue that if the Eleventh Circuit were to remand, they would have to face the burden of litigating simultaneously in two different courts.  However, on September 30, 2008, the Eleventh Circuit reversed the district court's decision and granted the declaratory judgment sought by Frulla without remanding the case to the district court.  Frulla, 543 F.3d at 1254.

court in Florida may have familiarity with the Plan, the instant case involves different issues, causes of action, and principles of law.  Frulla chose to litigate this case in Connecticut, and this choice is entitled to weight.  With regard to the convenience of parties and their counsel, both Frulla and defendants have relied primarily on counsel based in New York and the District of Columbia to litigate their disputes, and both parties have already obtained local counsel in Connecticut.  Frulla has alleged that the plan was administered in Connecticut, suggesting that the location of relevant documents is at least as likely to be in Connecticut as in Florida.  To the extent relevant documents have already been produced in discovery between the parties in the prior case, the fact that they were previously produced in litigation in Florida does not make the Southern District of Florida a more advantageous forum for this case.  While the convenience of witnesses may favor Florida to the extent defendant Marron resides there, that alone is not sufficient to meet defendants' burden in light of the other factors discussed.  In all, the defendants have not met their burden to persuade the court that it is in the interests of justice to transfer this case to the Southern District of Florida.

**V.      CONCLUSION**

For the forgoing reasons, defendants' Motion to Dismiss, and in the alternative,

to Transfer [**Doc. No. 27**] is DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 7th day of January, 2009.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge